**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Susan M. Schreffler,<br><br>    Plaintiff,<br><br>v.<br><br>Carolyn W. Colvin, Acting Commissioner of Social Security<br><br>    Defendant. | No. CV-13-08051-PCT-NVW<br><br>**ORDER** |

Plaintiff Susan M. Schreffler seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied her disability insurance benefits and supplemental security income under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. Because the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and is not based on legal error, the Commissioner's decision will be affirmed.

**I.    BACKGROUND**

**A.    Factual Background**

Schreffler was born in November 1962 and was thirty-five years old on the alleged disability onset date. She has at least a high school education and is able to communicate in English. She previously worked as a laborer and utility worker at a coal-fired power plant. She alleges both psychological and physical medical problems, including schizoaffective disorder, hypertension, diabetes, heart murmur, osteoporosis, sleep apnea, osteoarthritis, peripheral neuropathy, and a disc protrusion at lumbar level L5-S1.

Schreffler has had years of psychological treatment for substance abuse issues, which include use of alcohol and methamphetamine.

### B. Procedural History

Schreffler applied for disability insurance benefits on February 27, 2008, and for supplemental security income on February 29, 2008, alleging disability beginning May 6, 1998. On June 7, 2011, she appeared with her attorney and testified at a hearing before the ALJ.

On July 19, 2011, the ALJ issued a decision that Schreffler was not disabled within the meaning of the Social Security Act. The Appeals Council denied Schreffler's request for review of the hearing decision, making the ALJ's decision the Commissioner's final decision. On March 13, 2013, Schreffler sought review by this Court.

## II. STANDARD OF REVIEW

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

## III. FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears

the burden of proof on the first four steps, but at step five, the burden shifts to the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's residual functional capacity, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

At step one, the ALJ found that Schreffler meets the insured status requirements of the Social Security Act through December 31, 2004, and that she has not engaged in substantial gainful activity since May 6, 1998. To obtain disability insurance benefits, Schreffler must prove disability before December 31, 2004. To obtain supplemental security income, she must prove disability from February 2008 through July 19, 2011.

At step two, the ALJ found that Schreffler has the following severe combination of impairments: polysubstance dependence, anxiety disorder not otherwise specified, and mood disorder not otherwise specified. At step three, the ALJ determined that Schreffler does not have an impairment or combination of impairments that meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404.

At step four, the ALJ found that, based on all of her impairments, including the substance abuse disorders, Schreffler:

> has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following limitations/restrictions:
>
> - The claimant is limited to simple and repetitive tasks
>
> - The claimant must avoid work related hazards
>
> - The claimant must avoid jobs requiring frequent interacting with the public, supervisors, and co-workers
>
> - The claimant would miss more than four days [of] work each month due to substance abuse

The ALJ further found that Schreffler is unable to perform past relevant work. At step five, the ALJ concluded that, considering Schreffler's age, education, work experience, and residual functional capacity based on all of the impairments, including the substance use disorders, there are no jobs that exist in significant numbers in the national economy that Schreffler can perform.

The ALJ made additional findings regarding whether Schreffler would be found disabled if she stopped substance use. He found that, if Schreffler stopped the substance use, the remaining limitations (anxiety and mood disorders) would cause more than a minimal impact on the claimant's ability to perform basic work activities; therefore, she would continue to have a severe impairment or combination of impairments. If she stopped the substance use, she would not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. If she stopped the substance use, she would have the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except limited to simple and repetitive tasks and only occasional interaction with supervisors, co-workers, and the public. With that residual functional

capacity, there would be jobs that exist in significant numbers in the national economy that Schreffler could perform.

The ALJ concluded that because Schreffler would not be disabled if she stopped the substance use, her substance use disorder is a contributing factor material to the determination of disability, and therefore she has not been disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of his decision.

**IV.     ANALYSIS**

Schreffler does not dispute the ALJ's assessment that alcohol materially contributes to her psychological issues of record for most of the period in question. The only issue Schreffler raises on appeal is whether the ALJ committed legal error by failing to consider her physical impairments. The ALJ's hearing decision shows that he fully considered her alleged physical impairments and sufficiently explained why he did not find them to be severe.

Under Social Security Rules,

> No symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment.

SSR 96-4p; SSR 96-7p. In evaluating the credibility of a claimant's testimony regarding subjective pain or other symptoms, the ALJ is required to engage in a two-step analysis: (1) determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce some degree of the pain or other symptoms alleged; and, if so with no evidence of malingering, (2) reject the claimant's testimony about the severity of the symptoms only by giving specific, clear, and convincing reasons for the rejection. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Schreffler contends that she has the following documented physical problems: hypertension, coronary artery disease, irritable bowel syndrome, peripheral neuropathy, osteoarthritis, obstructive sleep apnea, and lumbar spondylosis with radiculopathy (lumbar disc protrusion). She asserts that the ALJ "misinterpreted the physical problems of the claimant because he has apparently not reviewed and not cited the objective findings of peripheral neuropathy or lumbar disc protrusion." In support of that assertion, she cites a March 2, 2010 report stating that an electrodiagnostic study reveals evidence of peripheral neuropathy in bilateral lower extremities and recommending follow-up with the referring physician. She does not cite the September 13, 2010 treatment notes that state that she had not started on gabapentin even though it was ordered in February 2010 to treat pain related to peripheral neuropathy. Schreffler also cites an April 8, 2010 report stating that a CT scan shows "small central subligamentous disc protrusion L5-S1." She does not cite any evidence of physical impairment before December 31, 2004, to support her claim for disability insurance benefits.

The ALJ was not required to refer specifically to each of Schreffler's medical records. He stated that Schreffler had sought "very intermittent treatment" for physical impairments, "especially knee pain, back pain, and neck pain." The ALJ identified specific medical evidence supporting his finding that Schreffler's physical impairments are not medically determinable or are not severe:

- February 19, 2008: X-ray of Schreffler's left knee was normal.
- May 30, 2008: Schreffler reported back, neck, and hand pain, and worsening of back pain the past two years, but reported the last time she had imaging of her back was fifteen years prior. The physical examination was normal.
- June 30, 2008, and July 9, 2008: During treatment for injury to her toe, right hand, and left ear, Schreffler did not report any back or other musculoskeletal pain.

- January 31, 2009: Schreffler sought treatment at the emergency room for chest pain, headaches, and panic attacks. She did not report any musculoskeletal complaints, multiple diagnostic tests revealed mild to no abnormal results, and the physician noted a completely normal exam.
- February 5, 2009: Schreffler sought treatment for chest pain, shortness of breath, and general malaise. She did not report any musculoskeletal complaints, and the physician noted a completely normal exam. The physician also wrote: "She claims that she had stopped using methamphetamine and alcohol for a long time and then she had used heavy alcohol for 2 days as well as she also used methamphetamine."
- Continued intermittent treatment through March 12, 2009: Schreffler complained of chest pain, dizziness, headaches, alcohol-induced injuries, numbness, and burning sensation while urinating. Physical examinations were "mostly normal."
- March 2009: Colonoscopy revealed severe sigmoid diverticulitis. June 2010 CT revealed diverticulosis without diverticulitis.
- April 11, 2009: Schreffler ambulated without difficulty and was able to get on and off the examination table without difficulty. The "mostly normal" objective examination did not corroborate her subjective complaints except for slight difficulty tandem walking and slightly decreased grip strength bilaterally.
- April 8, 2010: An MRI of the brain revealed normal results.
- August 10, 2010: Schreffler sought treatment for chest pain, shortness of breath, and other symptoms that she thought was a heart attack. She denied back pain, joint pain, joint swelling, muscle cramps, muscle weakness, stiffness, or arthritis.

1       - January 1, 2011:  Schreffler sought treatment at the emergency room for substance abuse.  She did not report any physical complaints, and the physician noted a completely normal physical examination.

The ALJ noted Schreffler "testified at the hearing that she suffers from severe and debilitating back pain, headaches, trouble breathing, and sleep apnea" and "has very limited ability to sit, stand, and walk."  Although the ALJ concluded that Schreffler had not presented objective medical evidence of a physical impairment that could reasonably be expected to produce some degree of the pain or other symptoms alleged, he provided specific, clear, and convincing reasons for finding Schreffler's statements concerning the intensity, persistence, and limiting effects of her symptoms not credible to the extent they are inconsistent with the residual functional capacity assessment.  He expressly considered the following:

> the claimant's own lack of subjective complaints; the absence of medically determinable impairments which can reasonably be expected to produce her symptoms; the absence of longitudinal records showing regular contact with physicians; the claimant's receipt of only routine and conservative treatment without reasonable or credible explanation; the claimant's lack of attempts to obtain relief from pain and other symptoms; the claimant's failure to try even prescribed treatment modalities for relief; the lack of consistency of claimant's subjective complaints throughout the medical record; the claimant's inconsistent work history and earnings record even prior to the alleged onset of disability; and the presence of acknowledged daily activities at a level fundamentally inconsistent with allegations of disabling symptoms.

These are specific, clear, and convincing reasons for finding Schreffler's testimony about the severity of her symptoms not entirely credible.

IT IS THEREFORE ORDERED that the final decision of the Commissioner of Social Security is affirmed.  The Clerk shall enter judgment accordingly and shall terminate this case.

Dated this 17th day of January, 2014

_____
Neil V. Wake
United States District Judge